UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ALYSHA ROBINSON and QUINCY-NORMAN STEWART, IV, | § § § § § § § § § § § § § § § | No. 1:25-cv-01243-DAE |
| Petitioners, | | |
| vs. | | |
| THE HONORABLE AURORA MARTINEZ JONES, Presiding Judge of the 126th District Court, Travis County, Texas, et al., | | |
| Defendants. | | |

_____

ORDER (1) ADOPTING REPORT AND RECOMMENDATION, AND
(2) DISMISSING CASE WITHOUT PREJUDICE

Before the Court is a Report and Recommendation ("Recommendation") filed by Magistrate Judge Susan Hightower. (Dkt. # 6.) On August 6, 2025, Petitioners Alysha Robinson and Quincy-Norman Stewart, IV (collectively "Petitioners"), filed a Petition for Writ of Habeas Corpus. (Dkt. # 1.) On August 8, 2025, Petitioners filed a Motion for Temporary Restraining Order. (Dkt. # 2.) On August 18, 2025, Magistrate Judge Hightower submitted a Report and Recommendation, recommending that the Court dismiss Petitioners' Writ of Habeas Corpus and Emergency Motion for Temporary Restraining Order for lack

of jurisdiction. (Dkt. # 6.) On September 4, 2025, Petitioners filed Objections to the Magistrate's Report and Recommendation ("Objections"). (Dkt. # 14.)

The Court finds this matter suitable for disposition without a hearing. After careful consideration, and for the reasons given below, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation, (Dkt. # 6) and **DISMISSES WITHOUT PREJUDICE** Petitioners' Writ of Habeas Corpus (Dkt. # 1) and Motion for Temporary Restraining Order (Dkt. # 2).

## BACKGROUND

The Court agrees with Judge Hightower's recitation of the facts and incorporates them in full:

Petitioners bring this Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 against Travis County District Court Judge Aurora Martinez Jones and nine Texas Department of Family and Protective Services ("DFPS") officials and employees. Petitioners contend that DFPS unlawfully removed and detained their minor children on June 26, 2025, in violation of their constitutional rights. (Dkt. # 1 at 1.) Petitioners allege that their children have been subject to "invasive medical procedures, religious dietary violations, and psychological trauma." (Id.) They seek a temporary restraining order "enjoining the 126th Judicial District Court and DFPS from proceeding with any hearings, trials, or further custody actions involving Petitioners' minor children until this Court has resolved the

pending federal habeas corpus petition." (Dkt. # 2 at 3.) Petitioners also seek a preliminary injunction "requiring the return of the children to Petitioners' physical custody pending adjudication of their constitutional and statutory claims." (Id.)

LEGAL STANDARDS

I.    Review of a Magistrate Judge's Report and Recommendation

The Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected. See 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). The objections must specifically identify those findings or recommendations that the party wishes to have the district court consider. Thomas v. Arn, 474 U.S. 140, 151 (1985). A district court need not consider "[f]rivolous, conclusive, or general objections." Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

Findings to which no specific objections are made do not require de novo review; the Court need only determine whether the Report and Recommendation is clearly erroneous or contrary to law. United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989).

II.     Subject Matter Jurisdiction

The Court has a continuing obligation to assure itself of its own subject matter jurisdiction. Elldakli v. Garland, 64 F.4th 666, 669 (5th Cir.), cert. denied, 144 S. Ct. 487 (2023). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Federal courts are courts of limited jurisdiction and "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted). Congress has granted the federal courts subject matter jurisdiction over two general types of cases: those arising under federal law ("federal question jurisdiction"), and those in which the amount in controversy exceeds $75,000 and there is complete diversity of citizenship among the parties ("diversity jurisdiction"). 28 U.S.C. §§ 1331, 1332(a); Home Depot U.S.A., Inc. v. Jackson, 587 U.S. 435, 437-38 (2019).

DISCUSSION

The Court agrees with Magistrate Hightower's ultimate determination that the Court has no subject matter jurisdiction over the case and should abstain from intervention due to the strong state interest in matters involving child custody. Petitioners make four objections: (1) the Recommendation erroneously construes

4

"custody" in the jurisdiction analysis to exclude state child seizure, contrary to Supreme Court precedent; (2) the Recommendation misapplies the "domestic relations exception;" (3) the Recommendation fails to consider the "state-created danger" doctrine; and (4) the Recommendation ignores the Younger exceptions. (Dkt. # 14.)  The Court will now conduct a de novo determination of each portion of the Recommendation to which Petitioners object.

I. Subject Matter Jurisdiction

In her Recommendation, Judge Hightower determined that the Court lacks subject matter jurisdiction over the claims.  (Dkt. # 6 at 2.)  She found that the Court lacks habeas jurisdiction over the Section 2241 petition because Petitioners are not "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c), which is "a necessary pre-requisite to habeas jurisdiction under 28 U.S.C. § 2241."  (Id. at 3) (citing Martin v. Ochonma, No. SA-25-CV-00463-XR, 2025 WL 1392085, at *1 (W.D. Tex. May 9, 2025)). Judge Hightower determined that Petitioners are not in "custody" because "custody" does not refer to parental custody or state custody orders, and because federal habeas is not available to challenge parental rights or child custody.  (Id.) (citing Rago v. Samaroo, 344 F. Supp. 2d 309, 314 (D. Mass. 2004); Lehman v. Lycoming Cnty. Children's Servs. Agency, 458 U.S. 502, 511 (1982)).

5

Petitioners object to Judge Hightower's construal of the "custody" requirement, arguing that the Supreme Court has held that "custody" is not limited to penal incarceration. (Dkt. # 14 at 1) (citing Jones v. Cunningham, 371 U.S. 236, 243 (1963); Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist., Santa Clara Cnty., California, 411 U.S. 345, 351 (1973)). While this is true, Supreme Court precedent is also clear that "federal courts have no jurisdiction in habeas corpus to determine a parent's right to custody of his minor children, even if it is alleged that custody was obtained by means that violate the Federal Constitution[,]" as Petitioners now allege. Rago v. Samaroo, 344 F. Supp. 2d 309, 215 (D. Mass. 2004) (citing Lehman, 458 U.S. at 515–16)). Petitioners are challenging the removal of their children by the Texas DFPS and the state court's custody orders. (See Dkts. ## 1; 11-7). Thus, Petitioners are incorrect that this "severe, ongoing deprivation of liberty" gives the Court jurisdiction. (Dkt. # 14 at 1.) "To extend the federal writ to challenges to state child-custody decisions based on alleged constitutional defects collateral to the actual custody decision would be an unprecedented expansion of the jurisdiction of the federal courts." Lehman, 458 U.S. at 503.

II.   Domestic Relations Exception

Judge Hightower also determined that even if the Court did have subject matter jurisdiction, the Court would decline to exercise jurisdiction because it involves child custody issues, which federal courts leave to the state. (Dkt. # 6 at

6

4) (citing Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992)).  Petitioners object that Judge Hightower misapplied this "domestic relations exception," which "does not apply where federal constitutional rights are at stake."  (Dkt. # 14 at 1.)

        Petitioners are correct that the domestic relations exception is not to be read expansively.  See Rykers v. Alford, 832 F.2d 895, 900 (5th Cir. 1987) ("[A] case should not be dismissed merely because the parties are from the same family and a domestic dispute forms part of the context of the litigation.").  However, the domestic relations exception should be resolved "by inquiry into 'whether hearing the claim will necessitate the court's involvement in domestic issues, i.e., whether it will require inquiry into the marital or parent-child relationship.'"  Rogers v. Janzen, 891 F.2d 95, 98 (5th Cir.1989) (quoting Jagiella v. Jagiella, 647 F.2d 561, 565 (5th Cir. 1981)).

        Petitioners challenge the procedures and jurisdictional authority by which the state took custody of their children, as well as allege that the state has violated their religious dietary and bodily sovereignty rights.  (Dkts. # 1, 2.)  In support, Petitioners put forth unsupported legal and factual conclusions, and at times contradict themselves.  For example, Petitioners contend that the state violated their constitutional rights by removing their children without submitting the required affidavit, but later clarify that the affidavit was filed, but with "[m]isleading foundation" and "unsupported claims."  (Dkt. # 1 at 2, 4.)

Petitioners ask that the Court order the immediate return of their children and stay any state proceedings. (Dkts. ## 1 at 4, 2 at 3.) Such a remedy would require the Court to inquire into the parent-child relationship to determine whether the state's justification for removing the children was warranted.

III.   Younger Abstention

Relatedly, Petitioners next object that Judge Hightower's implicit reliance on the Younger abstention doctrine ignores the exceptions to the doctrine. (Dkt. # 14 at 2.) The Younger abstention doctrine requires a federal court to abstain from interfering with pending state civil or criminal proceedings involving important state interests, absent extraordinary circumstances. Younger v. Harris, 401 U.S. 37, 44 (1971). A state's interest in domestic relations implicates important state interests. Moore v. Sims, 442 U.S. 415, 434–35 (1979) (in context of pending proceeding by state for custody of abused children, Court noted that family relations "are a traditional area of state concern"). Thus, Younger abstention is proper in this case for the reasons discussed above.

However, courts may disregard the Younger doctrine when "(1) the state court proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff, (2) the state statute is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it,' or (3)

8

application of the doctrine was waived." Texas Ass'n of Bus. v. Earle, 388 F.3d 515, 519 (5th Cir. 2004) (quoting Younger, 401 U.S. at 49). "Extraordinary circumstances also justify intervention" where irreparable injury is shown. DeSpain v. Johnston, 731 F.2d 1171, 1180 (5th Cir. 1984) (citing Younger, 401 U.S. at 53–54). The Supreme Court has not defined the scope of the "extraordinary circumstances" exception but has applied it in cases of a flagrantly unconstitutional state statute or a biased state tribunal. Kugler v. Helfant, 421 U.S. 117, 124–125 (1975).

Petitioners object that the state court proceeding was brought in bad faith because "DFPS pursued removal without affidavits, fabricated identifiers, and misrepresented facts solely to secure Title IV-E funding." (Dkt. # 14 at 2.) Petitioners provide no evidence to support their claims of bad faith and harassment. Rather, Petitioners argue that the DFPS petition included "inflammatory allegations–including child abuse, sexual exploitation, trafficking, and neglect contributing to the death of Petitioner's son." (Dkt. # 1 at 2.) Petitioner Stewart also alleges that he was "arrested on a fabricated kidnapping charge . . . ." (Id. at 3.) However, Petitioners provide no evidence to support these claims. Absent any evidence to support Petitioners' argument that these allegations and charges are manufactured in bad faith to wrongfully obtain custody of the children, this case does not fall under the bad faith Younger exception.

9

As to the "extraordinary circumstances" Younger exception, Petitioners do not allege that any state statute flagrantly violates constitutional prohibitions. Although Petitioners allege fraud upon the court (Dkt. # 1) they have not presented the Court with adequate evidence to support a finding of the "biased state tribunal" exception. See Kugler, 421 U.S. at 124–125. Instead, they allege "ongoing constitutional injuries, including religious liberty violations and medical endangerment, [which] rise to the level [of extraordinary circumstances] recognized by the Supreme Court as exceptions to abstention." (Id.) However, the Court struggles to find case law supporting the proposition that Petitioners alleged constitutional violations amount to "extraordinary circumstances" warranting federal intervention; nor have they presented the Court with adequate factual evidence that the state is endangering their children or violating their religious liberties to warrant such intervention. See Gates v. Strain, 885 F.3d 874, 881 (5th Cir. 2018) (noting the petitioner bears the burden of proof). Thus, Petitioners have not shown that any of the narrow Younger exceptions would apply here nor that they cannot raise their constitutional challenges to the custody issue in the ongoing state proceedings. See Gates, 885 F.3d at 880 (holding that absent a showing that the petitioner "cannot *raise* his constitutional claims in the state court . . . Younger abstention precludes an injunction here unless one of the three narrow exceptions applies.").

IV.  State-Created Danger Doctrine

Lastly, Petitioners object that Judge Hightower failed to consider the "state-created danger" doctrine. However, the Fifth Circuit has "repeatedly declined to adopt the state-create danger doctrine." Fisher v. Moore, 73 F.4th 367, 375 (5th Cir. 2023). In an analogous case involving the death of an infant child while in the custody of a state-licensed foster family, the Fifth Circuit noted that "even assuming a theory of liability for state-created danger the plaintiffs would not be entitled to any relief" because "a showing of deliberate indifference has not been made . . . ." Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regul. Servs., 380 F.3d 872, 880 n.1 (5th Cir. 2004). The Fifth Circuit stated that assuming such a theory, a plaintiff must, at the minimum, demonstrate that "(1) the state actors created or increased the danger to the plaintiff, and (2) the state actors acted with deliberate indifference." Id. Once again, the Court has not been presented with sufficient evidence to make such a finding. In fact, the state's allegations that Petitioners were in part responsible for the death of their son while in their custody (Dkt. # 1 at 2) would contradict their argument that "[t]he State's actions placed the children in greater danger than before." (Dkt. # 14 at 2.)

## CONCLUSION

For the foregoing reasons, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation (Dkt. # 6), and **DISMISSES WITHOUT**

**PREJUDICE** Petitioners' Writ of Habeas Corpus (Dkt. # 1) and Emergency Motion for Temporary Restraining Order and Stay of State Proceedings (Dkt. # 2) for lack of jurisdiction.  The Clerk's Office is **INSTRUCTED** to **CLOSE THE CASE.**

**IT IS SO ORDERED**.

**DATED**:  Austin, Texas, October 16, 2025.

_____
David Alan Ezra
Senior United States District Judge